# Arizona Department of Corrections
# Rehabilitation & Reentry



1601 WEST JEFFERSON
PHOENIX, ARIZONA 85007
(602) 542-5497
www.azcorrections.gov



DOUGLAS A. DUCEY
GOVERNOR

DAVID SHINN
DIRECTOR

May 17, 2021

VIA EMAIL   dale_baich@fd.org

Dale A. Baich, Esq.
Capital Habeas Unit Supervisor
Federal Public Defender's Office
850 West Adams Street, Suite 201
Phoenix, Arizona 85007

Re:  Department Order 710

Dear Mr. Baich:

Your letter dated March 16, 2021 to Director Shinn has been forwarded to me for a response. You have requested further information about Department Order 710 and the execution process. For ease of reference, I will answer your questions in the same sequence in which you asked them.

As to "what provisions will be made for attorney-client contact", the provisions of DO 710, to which you cite, will be observed as with prior executions. There will be no "changes to ADC's approach" with regard to attorney "level of contact" with your clients.

As to "where will condemned prisoners be housed during the thirty-five day pre-execution period", the provisions of DO 710, to which you cite, will be observed as with prior executions. There will be no "new location" as you query.

As to "what process should [your] clients follow to designate a spiritual advisor…including remaining with them in the execution chamber", the provisions of DO 710, to which you cite, will be observed as with prior executions. As you acknowledge, the inmate is permitted to designate two clergy to provide spiritual counsel "leading up to their executions", and Form 710-2 provides for that designation. As long as the designated clergy pass a security background check, they will be allowed to so serve the inmate. If the inmate would like one of his designated clergy to personally minister to him during the execution process itself, then that one clergy will be allowed to remain in the witness room, outside the execution chamber, wearing a microphone with which to communicate with the inmate. To be clear, no physical contact with the inmate will be permitted at any time.

As to "what precautions will ADCRR implement to protect execution participants from contracting SARS-CoV-2", ADCRR will require all participants to comply with existing CDC and ADHS guidelines for correctional facilities, which are the same guidelines that ADCRR has been implementing across the prison

Dale A. Baich, Esq.
May 17, 2021
Page 2 of 2

system since last year: masks, social distancing, and frequent use of hand sanitizer as necessary. These requirements will apply to all in-person visits between attorneys and the inmate as well.

As to "what additional provisions exist for an execution by lethal gas", the provisions of DO 710, to which you cite, will be observed as with prior executions. The "selection [and] composition" of the "lethal gas teams" has been determined as follows: the lethal gas team members are the same as the lethal injection team members; all have been cross-trained on both methods, as will be reflected upon production of the execution team training logs in response to your public records request set forth in your letter dated March 8, 2021.

As to your final request for confirmation that "the revised language in DO 710, § 1.1.2…is not intended to alter or eliminate the execution method choice provision found in A.R.S. § 13-757(B)", that is hereby confirmed. In fact, on the next page of DO 710, in § 2.1.2.2, the statutory execution method choice for those designated inmates is expressly referenced, along with Form 710-1, upon which the inmate makes his choice.

If you have any further questions, please direct them to my attention and I will endeavor to respond as promptly as is reasonably possible.

Sincerely,

*Brad K. Keogh*

Brad K. Keogh
General Counsel