JOSEPH J. PERKOVICH, ESQ. (*pro hac vice*)
NY Bar No. 4481776
Phillips Black, Inc.
PO Box 4544
New York, NY 10163
Tel: (212) 400-1660
j.perkovich@phillipsblack.org

AMY P. KNIGHT, ESQ.
AZ Bar No. 031374
Knight Law Firm, PC
3849 E Broadway Blvd, #288
Tucson, AZ 85716-5407
Tel: (520) 878-8849
amy@amyknightlaw.com

DAVID A. LANE, ESQ. (*pro hac vice*)
CO Bar No. 16422
REID ALLISON, ESQ. (*pro hac vice*)
CO Bar No. 52754
Killmer, Lane & Newman, LLP
1543 Champa Street, Suite 400
Denver, Colorado   80202
Tel:  (303) 571-1000
dlane@kln-law.com
rallison@kln-law.com
Attorneys for Frank Jarvis Atwood

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Frank Jarvis Atwood,<br><br>Plaintiff,<br><br>v.<br><br>David Shinn, *et al.*,<br><br>Defendants. | No.: CV22-00625-PHX-JAT (JZB)<br><br>**PLAINTIFF'S EMERGENCY MOTION FOR PRELIMINARY INJUNCTION** |

**Hearing Requested**

**\*\*CAPITAL CASE\*\***

**Execution scheduled for June 8, 2022 at 10:00 am**

Pursuant to Federal Rule of Civil Procedure 65, Plaintiff respectfully moves for a preliminary injunction ordering Defendants to refrain from executing Mr. Atwood without first allowing him to undergo the ritual of tonsure in the manner that permits him to participate fully in the ceremony (i.e., not in a restraint chair), and to refrain from executing him by lethal injection without allowing him to receive last rites inside the execution chamber, including the placing of his spiritual advisor's stole on his head. He further requests that this Court enjoin Defendants, in the event they are ordered to offer a valid lethal gas option, from executing him by lethal gas without accommodating his religious need to receive last rites at the time of execution. Without this order, Mr. Atwood will suffer irreparable harm, in that Mr. Atwood is subject to execution in just one week, in a manner that contravenes his religious beliefs that are protected by the First Amendment and the Religious Land Use and Institutionalized Persons Act (RLUIPA)—an irreversible spiritual harm whose dimensions are unknowable.

**BACKGROUND**

Frank Atwood, confined on Arizona's death row by the Arizona Department of Corrections, Rehabilitation & Reenty (the "Department"), has been a devout practitioner of the Greek Orthodox faith for more than two decades. He observes a strict schedule of prayer and study at the direction of his priest, Father Paisios, Abbot of the St. Anthony's Greek Orthodox Monastery in Florence, who baptized him into the faith in July, 2000 and has visited and ministered to him regularly for many years. Since his baptism by Fr. Paisios, Mr. Atwood has, in addition to his ongoing religious practice, earned a doctorate in theology and written several books on Greek Orthodox theology under both his given name and his baptismal name (Anthony).[1]

In 2012, the Department reduced both the frequency and length of the pastoral visits it had long permitted between Mr. Atwood and Fr. Paisios, and after exhausting the prison's grievance process, Mr. Atwood, acting pro se, filed suit against the director and an agency administrator under RLUIPA and the First Amendment. The defendants agreed, in resisting a preliminary injunction in that case, that Mr. Atwood "has enjoyed more than one religious visit per month as early as October 2002, and those visits have regularly exceeded longer than one hour." *Atwood v. Linderman, et al.,* CV-13-00174-PHX-JAT, Doc. 19 (June 10, 2013) at 2 [EXHIBIT 1]; *see also Atwood v. Linderman,*

---

[1] Mr. Atwood's publications include *West of Jesus: Bible's Answer to the Protestant Departure from Orthodox Belief* (2007); *Spiritual Alchemy* (2010); and *The Gates of Hades Prevaileth Not: Heresies, Schisms, & Other Errancies Renounced by the Eastern Church* (2012).

Doc. 31 at 12 [EXHIBIT 2] (this Court recognizing "Defendants do not dispute that [Mr. Atwood]'s sincerely held religious beliefs require weekly two-hour Greek Orthodox religious services that include confession and Holy Communion."). This Court found "that reducing the religious services from approximately twice-monthly to monthly and reducing the time from two hours to one hour constitutes a substantial burden to Plaintiff's religious practice." *Id.* at 12. It further observed the defendants did "not suggest, much less offer evidence, that Fr. Paisios has not been accredited as a religious leader or that there were problems regarding the previous visits either with security or burdensome scheduling," *id.* at 14, and found the State had failed to establish that it could not accommodate the resumption of these visits. The preliminary injunction was granted, and the parties quickly settled the case with an agreement that required bi-weekly two-hour visits that allowed participation in sacraments on a permanent basis. *Atwood v. Linderman,* CV-13-00174-PHX-JAT, Doc. 55-1 [EXHIBIT 3]. Over the years, Mr. Atwood has needed to file many grievances to maintain access to his pastoral visits and religious property, and he has doggedly done so.

Now, Arizona is preparing to execute Mr. Atwood on June 8, 2022. Anticipating this event, Mr. Atwood asked ADCRR to permit Fr. Paisios to accompany him in the execution chamber to administer last rites (including the very same sacraments it has accommodated for many years), which requires physical presence, touch, and speaking directly to Mr. Atwood. ADCRR refused, without explanation, even to allow him in the room. After Mr. Atwood filed his original complaint in this matter on April 13, 2022, the

Department hastily amended its Execution Procedures (D.O. 710) on April 20, 2022, to address spiritual advisors. The recently amended protocol states:

> *2.1.3.1.1. The inmate may designate one clergy/spiritual advisor to accompany the inmate into the lethal injection execution chamber for audible prayer and religious touch, consistent with the U.S. Supreme Court's Opinion in Ramirez v. Collier (March 24, 2022), and the Department reserves the right to enforce as necessary any or all reasonable restrictions on the audible prayer and religious touch as set forth in the U.S. Supreme Court's Opinion.*

Five days later, the State filed a Motion to Dismiss, asserting that its protocol amendment mooted Mr. Atwood's claims and it had fully satisfied its obligation to accommodate his religious exercise. On May 19, 2022, Mr. Atwood filed an Amended Complaint (Doc. 14), with the consent of the Department. The following day, the Department filed a motion to consolidate this case with a separate case Mr. Atwood filed regarding the method of his execution (Doc. 17), and on May 25, 2022, the Department filed a motion to dismiss the Amended Complaint (Doc. 19). Responses to those two motions are concurrently filed herewith. Also on May 25, 2022, this Court ordered that by May 31, 2022, either the parties file a stipulated proposed form of injunction, or the Department file a notice indicating where the parties disagree. Doc. 21. The parties subsequently exchanged proposed terms and agreed on many of them, but the Department has not agreed to allow Mr. Atwood to undergo the ritual of tonsure in a manner that comports with the requirements of his religion, instead insisting that he be placed in a restraint chair; has not agreed to allow Fr. Paisios to place his priestly stole on Mr. Atwood's head while inside the execution chamber; and has insisted that physical

touch be limited to the feet and ankles, no matter how Mr. Atwood is ultimately positioned. Moreover, the Department has steadfastly refused to discuss any accommodations in the event of an execution by lethal gas, as it has consistently taken the position that Mr. Atwood may now be executed only by lethal injection. *See* Motion (Doc. 19) at 4. Mr. Atwood is still entitled to a choice of execution by a *constitutional* lethal gas method, and the Department, in designating hydrogen cyanide as the gas it would use, has yet to offer him the choice it is required under Arizona law to provide. The Court hearing that matter has not yet decided that question.

**ARGUMENT**

A "plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

The *Winter* test operates on a kind of "sliding scale," and where "the balance of hardships tips sharply in the plaintiff's favor," the plaintiff need only "demonstrate[] . . . that serious questions going to the merits were raised," rather than a full-on likelihood of success, to satisfy the merits prong of the analysis and justify an injunction. *Alliance of the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011). In the context of an impending execution, the hardship to the plaintiff is at the extreme, and a lesser showing of likelihood of success is necessary. *See Barefoot v. Estelle,* 463 U.S. 880, 893 (1983).

The primary function of a preliminary injunction is to preserve the status quo pending a determination on the merits. *Chalk v. U.S. Dist. Court,* 840 F.2d 701, 704 (9th Cir. 1988). Of course, where the merits concern the manner of conducting an execution, they cannot be addressed after the execution, which is irreversible, has occurred. Mr. Atwood must be granted a preliminary injunction that requires the Department to refrain from executing him without his requested religious accommodations, because the defendants will otherwise violate his right to exercise his religion in the final moments of his life. The requested injunction gives the Department two options: afford the requested religious accommodations in the scheduled execution, or postpone the execution until a full merits determination can be had.

**I.  Mr. Atwood Is Likely to Succeed on the Merits of His RLUIPA Claim.**

Congress enacted RLUIPA "to accord religious exercise heightened protection from government-imposed burdens, consistent with" Supreme Court precedents. *Cutter v. Wilkinson*, 544 U.S. 709, 714 (2005). Under the statute, the Department must not impose a substantial burden on Mr. Atwood's exercise of his sincerely held religious belief unless the restriction "(A) is in furtherance of a compelling governmental interest; and (B) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C.A. § 2000cc (a)(1).

Once Mr. Atwood shows that his religious exercise was burdened, the Department "must prove its actions were the least restrictive means of furthering a compelling governmental interest." *Walker v. Beard*, 789 F.3d 1125, 1134 (9th Cir. 2015).  A

governmental action is the least restrictive alternative when there is "an 'exact fit' between the potential harm and the challenged state action." *Id.* at 1137. Under its own terms, RLUIPA must be "construed broadly in favor of protecting an inmate's right to exercise his religious beliefs." *Warsoldier v. Woodford,* 418 F.3d 989, 995 (9th Cir. 2005).

**A. Sincerely Held Religious Belief**

There can be no dispute that Mr. Atwood's commitment to Greek Orthodoxy is sincere. The record is so clear on this that the Department has never disputed it, in Mr. Atwood's prior litigation on religious exercise or in the current lawsuit. There is simply no credible argument that his commitment to the religion is anything but sincere.

The importance of preparation for death in the Orthodox Church is indisputable; St. Anthony's Greek Orthodox Monastery, home of Fr. Paisios, has even published a book on the subject, *The Departure of the Soul, According to the Teaching of the Orthodox Church* (2016).

Mr. Atwood is not even required to show that a tonsure that permits him to fully interact or the placement of the stole on his head during last rites is mandatory in his religion; he need only show that he sincerely believes it is consistent with his faith. *Shakur v. Schriro,* 514 F.3d 878, 884-85 (9th Cir. 2008). Mr. Atwood has easily cleared that bar.

**B. Substantial Burden**

For RLUIPA to apply, the burden created by the government's action must be substantial. The Ninth Circuit has recently explained that a "policy may impose a substantial burden on religious exercise in a number of ways," including "directly, by forbidding conduct that an inmate believes he is religiously compelled to do." *Jones v. Slade,* 23 F.4th 1124, 1140 (9th Cir. 2022). RLUIPA asks "whether the government has substantially burdened religious exercise. . . not whether the RLUIPA claimant is able to engage in other forms of religious exercise." *Holt v. Hobbs,* 574 U.S. 352, 361-62 (2015). In other words, the State cannot escape its obligation to accommodate Mr. Atwood's religious exercise by offering other ways he might practice his religion.

Here, the Department is refusing to allow Mr. Atwood to do two things that are important parts of Mr. Atwood's exercise religion: a tonsure ceremony that includes the ability to fully interact, and the placement of the stole on his head during last rites. The clergy of St. Anthony's monastery are adamant, and will testify at any hearing that is set on this motion, that confining Mr. Atwood to a restraint chair during the tonsure will significantly interfere with the ceremony, and that they cannot perform it completely and effectively under those conditions. They will further explain that the placement of the stole on the head is an integral part of the sacrament of confession.

The tonsure ceremony is the method by which a devout practitioner becomes an Orthodox monk. This change is incredibly significant, especially in the final hours when the new monk will be preparing to go to his death; in the Orthodox religion, the death of

a monk is treated differently from the death of a layperson. The ceremony has specific, prescribed elements—including the wearing of vestments and the cutting of a lock of hair—that are mandatory; it cannot be conducted in a manner the religion would consider effective without the required elements. Accordingly, requiring Mr. Atwood to be restrained in a restraint chair that would not permit him to interact fully throughout the ritual would prevent him from becoming a monk before he is killed. A burden that would prevent an occurrence with such heightened religious significance is necessarily a substantial one.

Restrictions on Fr. Paisios's use of his stole would also constitute a substantial burden. The priestly stole, known as an epitrachelion, is the most crucial vestment, and indeed is the only one without which the priest cannot conduct any sort of service.[2] In the sacrament of confession, the stole must be placed over the penitent's head before he is absolved. By restricting this component of the sacrament, the Department would be placing Mr. Atwood in grave doubt as to whether he could in fact be absolved in the moments prior to his death. Again, that is substantial by any definition.

Moreover, Defendants have not agreed to *any* accommodations for a lethal gas execution. Should the execution proceed with lethal gas, as Mr. Atwood continues to seek, Defendants have not agreed to make *any* provision for last rites. *See, e.g.,* Motion to Dismiss Amended Complaint (Doc. 19) at 4.

---

[2] *See* St. John the Evangelist Orthodox Church, "A Guide to Orthodox Liturgical Vestments," https://www.saintjohnchurch.org/orthodox-liturgical-vestments/#epitrachelion (last visited May 31, 2022).

Mr. Atwood is clearly likely to succeed on the merits in making a prima facie case under RLUIPA, and the burden shifts to Defendants to prove that refusing to allow a tonsure that would allow the ability to fully interact, and refusing to allow Fr. Paisios to place his stole on Mr. Atwood's head after he has been brought into the execution chamber, is the least restrictive means of furthering a compelling government interest.

**C. Furthering a Compelling Government Interest**

In denying Mr. Atwood's request, Defendants have not provided any reason why they could not accommodate his exercise of religion. Presumably, the interests they will assert concern security and avoiding disruption in the execution process. Mr. Atwood agrees that these are likely compelling interests. However, to satisfy RLUIPA, Defendants must prove the "imposition of the burden on that person" is "in furtherance of" the compelling interest. 42 U.S.C. § 2000cc(a)(1). Defendants cannot meet their burden. In particular, whatever interest the Department has in security does not require the use of a restraint chair, which would interfere significantly with the tonsure ritual. As Defendants well know, Mr. Atwood suffers from a severe spinal condition that causes both extreme pain and significant weakness. He has been unable to walk for several years. There is simply no risk that he would be able to cause any physical threat to anyone if allowed to remain in his wheelchair, especially if required to wear leg shackles, as he has agreed to do.

Moreover, given that Fr. Paisios has been conducting sacraments with Mr. Atwood inside the Browning Unit for decades without incident, there is no evidence that

restricting Fr. Paisios's ability to access Mr. Atwood inside the chamber furthers any interest in security. Likewise, it is unclear how permitting the full tonsure ceremony could interfere with the execution, as Mr. Atwood has agreed to do it the day before the execution. And there is no indication that allowing Fr. Paisios the opportunity to place his stole on Mr. Atwood's head inside the execution chamber would interfere with the progress of the execution. The execution process already contains a set of prescribed steps for the individual participants; it could surely accommodate one additional step.

**D. Least Restrictive Means**

Even if Defendants could show that significantly restricting the tonsure ceremony and forbidding the placement of the stole on Mr. Atwood's head during last rites furthers a compelling government interest, they are extremely unlikely to prevail on their required showing that that exclusion is the least restrictive means of furthering that interest.

Regarding the tonsure ceremony, Mr. Atwood has proposed that he remain in his wheelchair wearing leg shackles. That would satisfy any concern the Department had about security, especially given Mr. Atwood's physical condition. And regarding the use of the stole during last rites, if that positioning could not occur while proceeding through the steps in the lethal injection protocol, the Department could simply pause in its sequence of steps to permit the placement of the stole, continuing on exactly as planned, as soon as Fr. Paisios is finished.

In short, it is highly likely Mr. Atwood will establish a prima facie case under RLUIPA that in proceeding with the limited accommodations to which Defendants have

agreed, Defendants are substantially burdening his exercise of sincerely held religious beliefs, and Defendants will be unable to meet its burden to establish that its set of restrictions is the least restrictive means of furthering a compelling government interest.

## II.     Execution Without Accommodating Religious Exercise Would Cause Irreparable Harm.

The "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Warsoldier,* 418 F.3d at 1002 (reversing district court's denial of preliminary injunction under RLUIPA). It is difficult to imagine a harm more irreparable than an execution conducted in violation of the inmate's rights. Once the execution has occurred, there is no way to remedy the wrong. Mr. Atwood "is likely to suffer irreparable harm in the absence of injunctive relief because he will be unable to engage in protected religious exercise in the final moments of his life. Compensation paid to his estate would not remedy this harm, which is spiritual rather than pecuniary." *Ramirez v. Collier,* 142 S.Ct. 1264, 1282 (2022). This element is satisfied.

## III.    The Balance of Hardships Strongly Favors Mr. Atwood.

There can be no question that the balance of hardships here favors Mr. Atwood. Absent an injunction, he would be forced to meet his death without the ability to exercise his religious beliefs. This would be unacceptable for anyone, but Mr. Atwood's faith has been crucial to carrying him through unimaginable hardships already. During the better part of the past decade, Mr. Atwood has endured severely debilitating pain and incapacitation as a result, largely, of the deliberate indifference of Department officials

and their agents responsible for his medical care in relation to his degenerative spinal condition that has rendered him wheelchair-bound. This condition leaves him especially vulnerable to extreme pain during the execution process.

The harm in this would be magnified given Arizona's ongoing struggle to design and implement an Execution Protocol that produces humane executions. In the best case scenario, Mr. Atwood will be facing extreme anxiety that he will be the next Joseph Wood, who endured an hours-long execution requiring more than a dozen injections rather than the immediate death he had been promised. In the worst case, that fear would come true—the protocol once again fails, the drugs the State has struggled to procure and properly test do not work properly, and Mr. Atwood's physical and metaphysical suffering are extreme. In either case, facing his death while unable to fully exercise his religious beliefs is unimaginable.

### IV.    An Injunction Serves the Public Interest.

Mr. Atwood seeks only to prevent Arizona from going forward with his execution without accommodating his religious exercise, as is required by the Constitution and by RLUIPA. The Ninth Circuit has made clear that "it is always in the public interest to prevent the violation of a party's constitutional rights." *De Jesus Ortega Melendres v. Arpiao*, 695 F.3d 990, 1002 (9th Cir. 2012). Indeed, "perhaps no greater public interest exists than protecting a citizen's rights under the constitution." *Legal Aid Soc'y of Hawaii v. Legal Services Corp.*, 961 F. Supp. 1402, 1409 (D. Haw. 1997). The right to exercise

one's religion is just such a right, whether accessed directly through the Constitution or through a federal statute like RLUIPA.

Moreover, what Mr. Atwood seeks here is modest. He is not asking for an indefinite stay of execution; he asks only that ADCRR not be permitted to execute him unless or until it agrees adequately to accommodate his exercise of religion. Arizona's plans to carry out the execution need not be interrupted at all if the Department simply complies with its legal responsibilities to Mr. Atwood and agrees to the necessary accommodations; any disruption in the planned execution would be by Arizona's choice. There is simply no hardship to Defendants in being required to proceed only in a manner that honors Mr. Atwood's rights, and an injunction is clearly warranted here.

## CONCLUSION

The Court should enter a preliminary injunction ordering Defendants, their officers, agents, servants, employees, and attorneys, to refrain from executing Mr. Atwood without accommodating his religious beliefs by permitting the full tonsure ceremony allowing Mr. Atwood to remain in his wheelchair so he can participate fully, and by either permitting the placement of a stole on Mr. Atwood's head during his last rites inside the execution chamber in the event of a lethal injection execution or, in the event of a lethal gas execution, accommodating Mr. Atwood's request for adequate participation of his spiritual advisor.

DATED: June 1, 2022

/s/   Amy P. Knight
Amy P. Knight

Joseph J. Perkovich
David Lane
Reid Allison

Attorneys for Frank Atwood