# EXHIBIT 1

Thomas C. Horne
Attorney General

Michael J. Hrnicek
Assistant Attorney General
State Bar of Arizona No. 022900
1275 W. Washington Street
Phoenix, Arizona 85007-2926
Telephone: (602) 542-1610
Fax: (602) 542-7670
E-mail: michael.hrnicek@azag.gov

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Frank Jarvis Atwood,<br><br>  Plaintiff,<br><br>v.<br><br>Michael Linderman, et al.,<br><br>  Defendants. | No. CV 13-00174-PHX-JAT (LOA)<br><br>**DEFENDANTS' RESPONSE AND OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |

Defendants,[1] through undersigned counsel, hereby respond to Plaintiff Frank Atwood's ("Atwood's") Motion for Preliminary Injunction ("Motion") (Doc. 16) and the Court's June 4, 2013 Order to Show Cause (Doc. 18). Because weekly religious visits to deathrow inmate Atwood have never been authorized by Defendants or Arizona Department of Corrections' ("ADC's") chaplaincy, and First Amendment equal protection precludes special treatment for Atwood, good cause exists to deny Atwood's request for weekly visits. This Response is supported by the following Memorandum of Points and Authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

---

[1] Defendants served are Michael Linderman and Charles L. Ryan.

| | |
|---|---|
| 1 | Atwood is a deathrow inmate convicted of kidnapping and murder in 1987. |
| 2 | (Adult Inmate Management Systems Report http://www.azcorrections.gov/ |
| 3 | inmate_datasearch/results_Minh.aspx?InmateNumber=062887&LastName=ATWOOD |
| 4 | &FNMI=F&SearchType=SearchInet (accessed June 10, 2013))  Defendant Michael |
| 5 | Linderman ("Linderman") is appointed by Defendant Director Charles Ryan ("Ryan") |
| 6 | and employed by the Arizona Department of Corrections ("ADC") as the Administrator |
| 7 | of Pastoral Activities.  (Decl. Linderman ¶ 2 (June 10, 2013))  Linderman has reviewed |
| 8 | Atwood's Complaint (Doc. 1) and is aware of all written communications between him |
| 9 | and Defendants regarding religious issues.  (*Id*. ¶ 4 & 6) |
| 10 | Equal opportunity for religious exercise among the 35,000 ADC inmates who |
| 11 | have a declared religious preference requires that all inmates be afforded the same |
| 12 | religious visitation opportunities.  (*Id.* ¶ 9)  It is ADC policy and practice to allow all |
| 13 | inmates one religious visit per month for one hour.  (*Id.* ¶ 7)  This policy and practice is |
| 14 | meant to afford First Amendment religious visits while maintaining the legitimate ADC |
| 15 | interest in keeping order and not overwhelming the chaplaincy and/or visitation |
| 16 | personnel.  (*Id.* ¶ 8) |
| 17 | It is true that Atwood was inadvertently granted additional religious visits, which |
| 18 | were not approved by my office (ADC Chaplaincy), but were coordinated directly with |
| 19 | the visitation office by Atwood's Greek Orthodox religious visitor.  (*Id.* ¶ 10)  As |
| 20 | evidenced by the ADC Pastoral Visitation Report, he has enjoyed more than one |
| 21 | religious visit per month as early as October 2002, and those visits have regularly |
| 22 | exceeded longer than one hour.  (*Id.* ¶ 11)  At no point has Atwood had weekly religious |
| 23 | visits.  (*Id.* ¶ 12) |
| 24 | Starting in 2000, the Senior Chaplain at Arizona State Prison Complex- Eyman |
| 25 | ("ASPC-Eyman") arranged for a pastoral visit to Atwood in accordance with ADC's |
| 26 | standard procedure of one visit of one hour duration per month.  (*Id.* ¶ 13)  ADC records |
| 27 | |
| 28 | |

2

|   |   |
|---|---|
| 1 | reflect Fr. Papioannoy first visited Atwood on April 7, 2000.  (*Id.* ¶ 14)  A visitation |
| 2 | officer listed Fr. Papioannoy on Atwood's visitation list (a practice now prohibited in |
| 3 | policy) as a pastoral visitor ("P"), monitored the visit and allowed it to last 1.5 hours. |
| 4 | (*Id.* ¶ 15) |
| 5 | At some point the pastoral visitor began making direct contact with the visitation |
| 6 | officer and visited with the visitation office's approval.  (*Id.* ¶ 16)  ADC records are |
| 7 | unclear on when this happened.  (*Id.*)  When the Browning Unit Deputy Warden |
| 8 | discovered that visitation officers were allowing this practice, he stopped it.  (*Id.* ¶ 17) |
| 9 | Fr. Papioannoy subsequently contacted Linderman and admitted that a visitation |
| 10 | officer was allowing the extra and longer visits, but claimed that chaplains had |
| 11 | previously arranged the visits.  (*Id.* ¶ 18)  Fr. Papioannoy refused to provide Linderman |
| 12 | any verification that he had been going through the chaplain for the visits, or the identity |
| 13 | of the chaplain who had allegedly previously arranged the visits.  (*Id.* ¶ 19) |
| 14 | Linderman personally briefed Ryan on this issue when it was discovered and |
| 15 | stopped.  (*Id.* ¶ 20)  Ryan indicated he approved of discontinuing the practice, but |
| 16 | wanted a report on its inception.  (*Id.* ¶ 21)  Linderman then reported to Ryan about the |
| 17 | visitation officer's unauthorized practices, circumventing the chaplaincy.  (*Id.* ¶ 22) |
| 18 | To allow Atwood the frequency and/or lengthy visits he has inadvertently enjoyed |
| 19 | in the past presents equal protection problems for the remainder of the 35,000 inmates in |
| 20 | ADC custody who have declared a religious preference.  (*Id.* ¶ 24)  Apart from any |
| 21 | security concerns attached to frequent and lengthy religious visits (one staff member |
| 22 | must be present per religious visitor), the chaplaincy would be overwhelmed with |
| 23 | religious visitor applications as well as monitoring and scheduling responsibilities |
| 24 | associated with ADC-wide religious visitors.  (*Id.* ¶ 25)  At ASPC-Eyman there are |
| 25 | currently three full-time chaplains for 5,000 inmates.   (*Id.* ¶ 26)  Of the 5,000 inmates at |
| 26 |   |
| 27 |   |
| 28 |   |

ASPC-Eyman, there are 124 inmates on condemned ("death") row, according to the ADC's website. (*Id.* ¶ 27)

If the ADC gave special religious accommodation/treatment to Atwood in terms of the weekly visits he seeks, ADC would be legally and Constitutionally bound to offer equal opportunities to all death row inmates across the various ASPC facilities, and to the ADC's broader 35,000 declared religious inmate population as a whole. (*Id.* ¶ 28)

Allowing weekly pastoral visits to all ADC inmates with declared religious preference would require substantially greater personnel in the chaplaincy and my office to staff, monitor, process applications, and otherwise oversee such visits. (*Id.* ¶ 29) Although it is difficult to estimate how great that burden would be, it is safe to say that it would be substantial, likely requiring several additional full-time chaplains per each of the ADC's 10 public facilities. (*Id.*)

If Atwood desires to see Fr. Papioannoy more than once per month, he can be placed on Atwood's visitation list as a regular visitor, and avail himself of the three weekly regular visitation opportunities. (*Id.* ¶ 23)

**LEGAL ARGUMENT**

**A. Legal Standard for Granting Injunctive Relief**

The purpose of a preliminary injunction is to preserve the status quo among the parties pending the outcome of the action. *Regents of University of California v. American Broadcasting Companies, Inc.*, 747 F.2d. 511, 514 (9th Cir. 1984). It is an "extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

The Court may grant a preliminary injunction or a temporary restraining order only if Atwood can establish the following: "(1) [a] strong likelihood that he will

4

succeed at trial on the merits; (2) [t]he possibility of irreparable injury to him not remediable by damages if the requested relief is not granted; (3) [a] balance of hardship favors himself; and (4) [p]ublic policy favors the injunction." *Shoen v. Shoen*, 167 Ariz. 58, 63, 804 P.2d 787, 792 (App. 1990); *see also Burton v. Celentano*, 134 Ariz. 594, 595, 658 P.2d 247, 248 (App. 1982); *Children of the Rosary v. City of Phoenix*, 154 F.3d 972, 975 (9th Cir. 1998), Rule 65, Ariz. R. Civ. P.; *see generally* McAuliffe, Arizona Civil Rules Handbook, p. 650 (2005). "The critical element in this analysis is the relative hardship to the parties. To meet his burden, the moving party may establish either 1) probable success on the merits and the possibility of irreparable injury; or 2) the presence of serious questions and 'the balance of hardships tip sharply' in his favor." *Shoen*, 167 Ariz. at 63, 804 P.2d at 792.

Because Atwood cannot demonstrate that he is likely to prevail on the merits and that he will suffer irreparable harm if the Court does not intercede, the Court should deny injunctive relief. (*Id.*)

**B. Atwood Has Not Shown a Strong Likelihood of Success on the Merits.**

Atwood's Motion is not supported by a factual record of religious discrimination, as reflected in Defendant Michael Linderman's June 10, 2013 Declaration and attached ADC Pastoral Visitation Report. Atwood has never enjoyed weekly pastoral visits, and the bi-weekly monthly visits that Atwood enjoyed were not authorized by the ADC chaplaincy, as required of all pastoral visits. If anything, Atwood has benefitted by preferential treatment because he has been afforded pastoral visits that have exceeded ADC policy and practice both in number and in length. However, these visits were scheduled without consultation of the chaplaincy. Neither Atwood nor his pastoral visitor should be rewarded for circumventing ADC chaplaincy policy and practice in the past, nor is he entitled to preferential treatment contrary to ADC policy which equitably allows reasonable access by all inmates to pastoral visitors of one visit per month.

5

This equal opportunity allows the free exercise of religion. Atwood, like all inmates, may receive one monthly pastoral visit for an hour. This policy and practice advances the legitimate State and ADC interests of maintaining security and order and reasonable expectations on chaplains and correctional officer staff. The policy and practice is rationally related to the legitimate state interests.

Furthermore, if Atwood truly wants to spend more time and have more visits with Fr. Papioannoy or any other pastoral visitor, he need only change the pastor to his regular visitation list.

**C. Atwood Fails to Show that he Will Suffer Irreparable Injury that is Not Otherwise Remediable by Damages.**

Before a court will issue a preliminary injunction, the party seeking the injunction must demonstrate that a real threat of irreparable harm exists which is not remediable by damages. *Brennan Petroleum Products Co., Inc., v. Pasco Petroleum, Co., Inc.*, 373 F.Supp. 1312, 1316 (1974); *see Phoenix Orthopaedic Surgeons, Ltd. v. Peairs*, 164 Ariz. 54, 58, 790 P.2d 752, 756 (App. 1989.) Atwood cannot show by specific facts that he is in danger of immediate and irreparable harm. *See* Rule 65(d), Ariz. R. Civ. P. As indicated above, his Motion is not taken in good faith, and mischaracterizes the nature, frequency, and unauthorized way in which the visits were scheduled. Atwood is entitled to free exercise of his religion in terms of his personal worship, but not to unauthorized preferential treatment.

### CONCLUSION.

The allegations that inmate Atwood presents to the Court lack any arguable merit. He fails to honestly acknowledge and explain the deception that inadvertently led to excessive and overly lengthy pastoral visits in the past. Instead, he goes on the offensive and claims that the ADC's identification and remediation of the unauthorized visits constitutes a constitutional violation. Good cause exists to uphold the ADC's policy of monthly pastoral visits of one hour for all of its 35,000 inmates. It is equal on its face,

6

and is meant to be applied equally. It is the least restrictive means by which inmates may enjoy equal protection under the law, and simultaneously rationally related to the state's legitimate interests.

If Atwood truly desired more visitation with Fr. Papioannoy he can obtain more and visits by placing him on his regular visitation list. Therefore, good cause exists, and Defendants request that the Court deny Atwood's motion for a preliminary injunction granting him unauthorized preferential treatment.

RESPECTFULLY SUBMITTED this June 10, 2013.

Thomas C. Horne
Attorney General

s/Michael J. Hrnicek
Michael J. Hrnicek
Assistant Attorney General
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on June 10, 2013, I electronically transmitted the attached document to the Clerk of the Court using the ECF System. This document and the Notice of Electronic Filing were served by mail on the same date on the following, who is not a registered participant of the CM/ECF System:

Frank J. Atwood, ADC #062887
ASPC - Eyman - Browning Unit
P.O. Box 3400
Florence, AZ 85132-3400
*Plaintiff Pro Se*

s/Colleen S. Jordan
Secretary to Michael J. Hrnicek

7