MARK BRNOVICH
ATTORNEY GENERAL
(FIRM STATE BAR NO. 14000)

JEFFREY L. SPARKS (AZ BAR NO. 27536)
DEPUTY SOLICITOR GENERAL
SECTION CHIEF OF CAPITAL LITIGATION
LAURA P. CHIASSON (AZ BAR NO. 19025)
ASSISTANT ATTORNEY GENERAL
CAPITAL LITIGATION SECTION
400 WEST CONGRESS, BLDG. S–215
TUCSON, ARIZONA 85701–1367
TELEPHONE: (520) 628–6520
CLDOCKET@AZAG.GOV

ATTORNEYS FOR DEFENDANTS

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Frank Jarvis Atwood,<br>Plaintiff,<br>-vs-<br>David Shinn, et al.,<br>Defendants. | CV 22–00625–PHX–JAT (JZB)<br><br>**RESPONSE TO PLAINTIFF'S EMERGENCY MOTION FOR PRELIMINARY INJUNCTION** |

Defendants hereby oppose Plaintiff Frank Atwood's Motion for Temporary Restraining Order and/or Preliminary Injunction. *See* Dkt. 28. This Court should deny Atwood's motion because he has not established a likelihood that he will succeed on the merits of his claims, that he will suffer irreparable harm, that "the balance of equities tips on his favor," or that "an injunction is in the public interest." *Benisek v. Lamone*, 138 S. Ct. 1942, 1944 (2018) (quotation marks omitted). This Response is supported by the attached Memorandum of Points and Authorities.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. BACKGROUND.

In 1987, Atwood was sentenced to death for the 1984 murder of 8-year-old V.L.H. During the ensuing 30 years, Atwood pursued his appeals in the state and federal courts. On May 3, 2022, the Arizona Supreme Court issued a warrant for his execution, setting his execution for June 8, 2022. Because Atwood's crime was committed before November 23, 1992, he could choose to be executed either by lethal injection or lethal gas. *See* Ariz. Const. Art. 22, § 22. Atwood was required to make this choice "at least twenty days before the execution date," which was May 19, 2022. A.R.S. § 13–757(B). On May 18, 2022, Atwood completed and signed a form indicating his refusal to select an execution method. Under Arizona law, Atwood's failure to choose a method means that he will be executed by lethal injection. *Id.*

On April 13, 2022, Atwood filed his initial complaint in the instant case. Dkt. 1. He then filed an amended complaint on May 19, 2022. Dkt. 14. In the amended complaint, Atwood alleged that the ADCRR's execution procedures will violate his First Amendment rights and the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA). *Id.* at 14–19. Defendants moved to dismiss the complaint on May 25, 2022. Dkt. 19. In the motion, Defendants explained that the execution protocol accommodates Atwood's request to meet with his spiritual advisor prior to the execution. *Id.* at 5. The protocol also allows Atwood's spiritual advisor to accompany him into the lethal injection chamber, touch Atwood, and pray audibly during the execution. *Id.* at 3.

This Court ordered "that if Defendants agree to accommodate Plaintiff's religious exercise requests before and during his execution, the parties must … submit to the Court a proposed from of injunction delineating the specific parameters of any religious visits prior to Plaintiff's execution and conduct during Plaintiff's execution." Dkt. 21, at 1–2. The Court further ordered that, if the parties

agreed on a proposed form of injunction, that injunction be filed no later than May 31, 2022. *Id*. "If Defendants have not agreed to facilitate Plaintiff's requests, they must file a Notice indicating where the parties disagree." *Id*. at 2. This Court granted a 1-day extension, and on June 1, 2022, Defendants filed a Notice indicating numerous accommodations they would provide before and during the execution. *See* Dkt. 25, at 1–3. While the parties agreed on many accommodations to allow Atwood's religious exercise, they did not agree on three specific accommodations requested by Atwood:

1. Requiring the use of a restraint chair (vs. wheelchair and leg shackles) during the tonsure ceremony.
2. Limiting touch to the feet and ankles, with no qualification for how Plaintiff is ultimately positioned.
3. Disallowing the use of the priestly stole inside the execution chamber.

*Id*. at 3. Atwood has filed a motion for a preliminary injunction "ordering Defendants to refrain from executing Mr. Atwood" unless these three accommodations are made. Dkt. 28, at 2.

## II. ATWOOD IS NOT ENTITLED TO INJUNCTIVE RELIEF.

"[A] preliminary injunction is an extraordinary remedy never awarded as of right." *Benisek*, 138 S. Ct. at 1943 (quotation marks omitted). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 20 (2008). Thus, even if a plaintiff can show a likelihood of success on the merits, "a preliminary injunction does not follow as a matter of course." *Benisek*, 138 S. Ct. at 1943. These principles apply "even in the context of an impending execution." *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012); *see also Hill v. McDonough,* 547

U.S. 573, 583–84 (2006) ("Filing an action that can proceed under § 1983 does not entitle the complainant to an order staying an execution as a matter of course.").

**A. Atwood is not likely to succeed on the merits of his RLUIPA claim.**

Atwood seeks injunctive relief on his RLUIPA claim (Claim 3). That statute provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a).[1]

Atwood asserts that Defendants are "refusing to allow [him] to do two things that are important parts of [his] exercise religion [sic]: a tonsure ceremony that includes the ability to fully interact, and the placement of the stole on his head during last rites."[2] Dkt. 28, at 9.

*1. Atwood has not demonstrated he is likely to succeed on his claim that Defendants have substantially burdened his tonsure ceremony.*

---

[1] Atwood cites 42 U.S.C. § 2000cc(a)(1), which prohibits a government from implementing "a *land use regulation* that imposes a substantial burden on the religious exercise of a person" unless the government shows that the regulation is the least restrictive means of furthering a compelling government interest. (emphasis added); *see* Dkt. 28, at 7. Defendants believe that 42 U.S.C. § 2000cc-1, which applies to persons "residing in or confined to an institution," is applicable here.

[2] Atwood's motion does assert a likelihood of success on his disagreement with the provision "limiting touch to the feet and ankles, with no qualification for how Plaintiff is ultimately positioned." Dkt. 25, at 3.

Defendants have agreed to allow the tonsure ceremony to be performed on June 7, 2022 (as Atwood requested) and to the following:

> ADCRR shall provide Plaintiff's spiritual advisor with electric clippers to use in performing the tonsure. ADCRR shall allow the spiritual advisor to recite prayers, place ceremonial garments on Plaintiff, trim a lock of Plaintiff's hair, and bring an assistant (an additional priest from St. Anthony's monastery, whose name will be submitted at least one week prior to the execution), with his traditional vestments, to serve as a chanter during the tonsure. ADCRR shall also allow Plaintiff's spiritual advisor to bring in a ceremonial vestment to be worn by Plaintiff for the tonsure, and Plaintiff will be permitted to wear this vestment during the ceremony. Permissible elements of this vestment shall be limited to an outer garment/robe ("zostiko"), short vest ("kondo"), covering made of thin cords woven into crosses ("polystavros"), hat ("Skoufos"), veil ("Koukouli"), scapular ("Great Schema"), belt, and shoes. ADCRR shall also permit Plaintiff's spiritual advisor to lay hands on Plaintiff's head, place a garment across Plaintiff's head, shoulders, and/or torso, and anoint Plaintiff with oil during the tonsure ceremony.

Dkt. 25, at 2. The only restriction Defendants have imposed is that Atwood will be placed in a restraint chair during the ceremony.

While Atwood asserts that his placement in a restraint chair will "significantly interfere with the [tonsure] ceremony," he does not explain how this is so. Dkt. 28, at 9. Atwood fails to identify any part of the tonsure ceremony that will be hindered if he is in a restraint chair. Nor does he explain why being in the restraint chair will prevent him from "interact[ing] fully throughout the ritual." *Id*. at 10. Although he asserts that his clergy "will testify at any hearing … that confining Mr. Atwood to a restraint chair during the tonsure will significantly interfere with the ceremony," he presents no sworn statement or offer of proof explaining how his restraint will "interfere with the ceremony." *Id*. at 9. Atwood has failed to establish that being in the restraint chair will substantially burden the tonsure ceremony.

Atwood also asserts that Defendants' compelling interest in ensuring security does not justify his placement in a restraint chair during the tonsure ceremony. *Id*. at 11–13. But because he has identified no way in which his

participation in the tonsure ceremony will be burdened by being seated in the restraint chair, this Court need not reach this question. Atwood has failed to establish a likelihood that he will prevail on his RLUIPA claim related to the tonsure ceremony.

*2. Atwood has not demonstrated that he is likely to succeed in showing that Defendants will substantially burden his last rites ceremony.*

Atwood also contends that "[r]estrictions on Fr. Paisios's use of his stole would also constitute a substantial burden." *Id.* at 10. Atwood asserts that, "[i]n the sacrament of confession, the stole must be placed over the penitent's head before he is absolved," and without it Atwood will be "in grave doubt as to whether he could in fact be absolved in the moments prior to his death." *Id.* Again, however, Defendants are not preventing Atwood from receiving his last rites in the manner he requests. Defendants have agreed to the following:

> ADCRR shall permit Plaintiff's spiritual advisor to lay hands on Plaintiff's head and place a last rites garment across Plaintiff's shoulders. In performing last rites, ADCRR shall allow the spiritual advisor to wear his usual vestments, including his stole, and to bring in three small spiral bound service books containing prayers, a vial of sacramental oil, a vial of holy water, a handheld cross, a small prayer rope, and a candle. ADCRR shall provide matches or a lighter to light the candle.

Dkt. 25, at 2. The only limitation Defendants have placed on Atwood's last rites ceremony is that it be performed *before* Atwood enters the lethal injection room. *See id*. at 1. Atwood does not assert that this mere time and place limitation will substantially burden his religious exercise.

In any event, Atwood agrees that the Defendants have a "compelling interest[]" in "avoiding disruption in the execution process." Dkt. 28, at 11. He asserts, however, that "there is no indication that allowing Fr. Paisios the opportunity to place his stole on Mr. Atwood's head inside the execution chamber would interfere with the progress of the execution." *Id*. at 12. He is incorrect.

The parties agree that Fr. Paisios may accompany Atwood into the execution chamber and will be permitted to touch Atwood only on his feet and ankles while Atwood is on the execution table. As can be seen in the attached photographs, the lethal injection room is small, and the table is positioned so that the inmate's feet are closer to the entrance. *See* Exhibit A. Moreover, the arm rests on the table will be extended during the execution, further limiting the available space in the room. Fr. Paisios will be standing at Atwood's feet, near the entrance to the room. Also in the room will be several members of the execution team who must ensure both that Atwood is properly restrained and that the IV lines are properly placed. *See* Dkt. 1-3, at 7–8 (Department Order 710, at ¶ 3.2.3) (designating a minimum of seven Restraint Team members, whose primary function "is to provide continuous observation of the inmate on the day of the execution and apply appropriate restraint procedures and inmate management prior to, during and after the execution"); *id*. at 8–9 (Department Order 710, at ¶ 3.2.5) (designating "two or more" IV Team members who are responsible for inserting "either peripheral IV catheters or a central femoral line," and must "ensure all lines are functioning properly throughout the procedure"). For Fr. Paisios to place the stole on Atwood's head during the execution, he would have to travel across the room from his place at Atwood's feet to Atwood's head. This will require execution team members to leave their established posts (and perhaps the room itself) to allow Fr. Paisios to pass, seriously compromising the Defendants' ability to competently carry out the execution in the manner required by law and by established procedures.

Atwood asserts that preventing Fr. Paisios from placing the stole on his head in the lethal injection room is not the "least restrictive means" of protecting its interest in conducting the execution. He proposes that, if the placing of the stole could not take place while the lethal injection procedures are carried out, the execution team could "simply pause in its sequence of steps to permit placement of the stole." Dkt. 28, at 12. But because of the small size of the chamber, a "pause"

will not be enough. Instead, as just explained, execution team members will need to move out of the way—and perhaps out of the room—to allow Fr. Paisios to place the stole. Given the importance of placing the IV lines and ensuring that they function properly, requiring execution team members to "pause" and leave their posts could compromise the integrity of the lines and the execution itself. Atwood does not identify any portion of the procedure that would be appropriate to "pause" to allow Fr. Paisios to move through the lethal injection room.

Even if requiring the last rites—and placement of the stole—to be performed before Atwood enters the lethal injection chamber substantially burdens Atwood's religious exercise, the Defendants have a compelling interest in ensuring that the execution is carried out according to the law and to their execution procedures. Requiring Fr. Paisios to place a stole on Atwood's head before entering the lethal injection room is the least restrictive means of protecting that interest. *See Chance v. Texas Dept. of Criminal Justice*, 730 F.3d 404, 417 (5th Cir. 2013) ("Because [the prison] still permits [the religious ceremony] outdoors and has offered uncontroverted evidence demonstrating the reasonableness of its determination to ban [the ceremony indoors], we conclude that its … policy is the least restrictive means of achieving its compelling interests."). Atwood has not demonstrated otherwise.

**B. Atwood will not be irreparably harmed if this Court does not grant a preliminary injunction.**

Even if a plaintiff can show a likelihood of success on the merits, "a preliminary injunction does not follow as a matter of course." *Benisek*, 138 S. Ct. at 1943. Rather, a court must also consider whether the movant has shown "that he is likely to suffer irreparable harm in the absence of preliminary relief…." *Id*. at 1944; *see also All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) ("Under *Winter*, plaintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction."). Atwood asserts that he

will suffer irreparable harm "because he will be unable to engage in protected religious exercise in the final moments of his life." Dkt. 28, at 13 (quotation marks omitted). But Defendants are not preventing Atwood from engaging in "protected religious exercise" before his execution, and its minimal restrictions do not substantially burden the exercise of his religious rights. Accordingly, Atwood will not be irreparably harmed if a preliminary injunction is not granted.

**C. The balance of equities does not tip in Atwood's favor.**

Before granting a preliminary injunction, this Court must also determine that the balance of equities tips in [Atwood's] favor." *Benisek*, 138 S. Ct. at 1944. In particular, "a party requesting a preliminary injunction must generally show reasonable diligence." *Benisek*, 138 S. Ct. at 1944. Atwood does not attempt to show he has been diligent in pursuing this claim. Instead, he asserts that "the balance of hardships" favors him because "he would be forced to meet his death without the ability to exercise his religious beliefs" if a preliminary injunction is not granted. Dkt. 28, at 13. As explained, however, Atwood will not be prevented from practicing his religion before and during his execution.

Atwood also asserts as a "hardship" that he has "endured severely debilitating pain," but he does not explain how that pain is relevant to, or would be eased by, the preliminary injunction he requests here. *Id*. Atwood further claims that Arizona's execution protocol "magnifie[s]" the harm to him and that he fears "endur[ing] an hours-long execution." *Id*. at 14. Again, however, this is not something that would be alleviated by the preliminary injunction he seeks here. Thus, Atwood has not established any relevant "hardships" that will flow if his requested injunction is not granted.

Nor has Atwood demonstrated diligence in seeking to have his priest place the stole on his head during the execution. In his amended complaint, Atwood acknowledged that the current execution protocol permits his spiritual advisor to be in the lethal injection room and to touch him and pray aloud. Dkt. 14, at 3. In

explaining last rites and tonsure, Atwood stated "this requires the physical presence of his priest who can touch him while praying and speaking to him." *Id*. at 18; *see also id*. at 8 ("Mr. Atwood's religious beliefs require that his priest be by his side during his execution to pray and administer last rites, including placing his hands on him and speaking to him directly."). He said nothing about requiring a stole to be placed on his head.

Based on the accommodations Atwood requested in the amended complaint, and pursuant to this Court's order of May 25, 2022, Defendants' counsel sent to Atwood's counsel a proposed stipulated injunction on May 26, 2022. *See* Exhibit B. That proposed injunction provided two hours on the morning of the execution for Atwood's priest to conduct the tonsure and last rites ceremonies. *Id*. at ¶ 1; *see* Dkt. 14, at 3 (Atwood requesting "one hour with his priest on the day of but prior to the actual lethal injection"). It also provided that Atwood's spiritual advisor could accompany him into the lethal injection room and could pray audibly and touch Atwood "only on the ankle or foot." Exhibit B, at ¶ 5.

Four days later, Atwood's counsel presented an amended proposed injunction to Defendants' counsel, which permitted Atwood's spiritual advisor to perform the tonsure ceremony on the day *before* the execution. Exhibit C, at ¶ 1. It also provided that Atwood's "spiritual advisor shall be permitted to perform last rites on the day of the execution" and would "be permitted to physically touch Plaintiff only on the ankle or foot" in the lethal injection room. *Id*. at ¶¶ 7, 9. Atwood did not specify that the last rites would be performed in the lethal injection room or that his spiritual advisor should be permitted to place a stole on his head while in the room; in fact he agreed his spiritual advisor would touch him *only* on the ankle or foot. Only after counsel for Defendants inquired did Atwood's counsel finally indicate that they contemplated the last rites would be conducted inside the lethal injection chamber and would involve placing a stole on Atwood's head in the chamber. *See* Exhibit D, at 1–2. Because Atwood has not acted

diligently in pursuing accommodations for his religious exercise, equity does not support a preliminary injunction.

**D. The public interest will not be served by injunctive relief.**

Finally, to obtain a preliminary injunction Atwood must show that "an injunction is in the public interest." *Benisek*, 138 S. Ct. at 1944. Atwood asserts that "it is always in the public interest to prevent the violation of a party's constitutional rights." Dkt. 28, at 14 (quotation marks omitted). But because Atwood's constitutional rights will not be violated during his execution, this truism is irrelevant. Atwood also claims that Defendants can avoid any delay in his execution if they would simply capitulate to his demands. *Id*. at 15. But Atwood does not explain how the public interest is served by allowing him to dictate procedures that will compromise the Defendants' ability to carry out his execution in a competent manner that complies with the law and with the stated procedures. That Defendants could avoid delay by agreeing to his demands does not justify granting a preliminary injunction.

Moreover, "[b]oth the State and the victims of crime have an important interest in the timely enforcement of a sentence." *Hill*, 547 U.S. at 584. In particular, Arizona has provided victims a constitutional right "to be free from intimidation, harassment, or abuse, throughout the criminal justice process" and to "a speedy trial or disposition and prompt and final conclusion of the case after the conviction and sentence." Ariz. Const. art. II, § 2.1(1), (10). Atwood's victims waited 30 years for Atwood to complete his appeals. Now that he has, this Court should consider their right (and the State's) to a speedy resolution of this already drawn-out case.

Denying Atwood's motion and allowing the execution to proceed on June 8, 2022, will violate none of Atwood's rights and will ensure the long-awaited conclusion to Atwood's kidnapping and murder of an 8-year-old girl almost 40 years ago.

## III. CONCLUSION.

Because Atwood has failed to establish that he is likely to succeed on the merits of his RLUIPA claim, this Court should deny Atwood's motion for preliminary injunction.

RESPECTFULLY SUBMITTED this 3rd day of June, 2022.

Mark Brnovich
Attorney General

Jeffrey L. Sparks
Deputy Solicitor General
Section Chief of Capital Litigation

/s/ Laura P. Chiasson
Assistant Attorney General

Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on June 3, 2022, I electronically transmitted the attached document to the Clerk's Office using the ECF System for filing and served the attached document using ECF on the following registered participants of the ECF System:

Joseph J. Perkovich
Phillips Black, Inc.
PO Box 4544
New York, NY 10163
Tel: (212) 400-1660
j.perkovich@phillipsblack.org

Amy P. Knight
Knight Law Firm, PC
3849 E. Broadway Blvd., #288
Tucson, AZ 85716
Tel: (520) 878-8849
amy@amyknightlaw.com

David A. Lane
Reid Allison
Killmer, Lane & Newman, LLP
1543 Champa Street, Suite 400
Denver, CO 80202
Tel: (303) 571-1000
dlane@kln-law.com
rallison@kln-law.com

Attorneys for Plaintiff

s/ Maria Palacios