JOSEPH J. PERKOVICH, ESQ. (*pro hac vice*)
NY Bar No. 4481776
Phillips Black, Inc.
PO Box 4544
New York, NY 10163
Tel: (212) 400-1660
j.perkovich@phillipsblack.org

AMY P. KNIGHT, ESQ.
AZ Bar No. 031374
Knight Law Firm, PC
3849 E Broadway Blvd, #288
Tucson, AZ 85716-5407
Tel: (520) 878-8849
amy@amyknightlaw.com

DAVID A. LANE, ESQ. (*pro hac vice*)
CO Bar No. 16422
REID ALLISON, ESQ. (*pro hac vice*)
CO Bar No. 52754
Killmer, Lane & Newman, LLP
1543 Champa Street, Suite 400
Denver, Colorado  80202
Tel:  (303) 571-1000
dlane@kln-law.com
rallison@kln-law.com

Attorneys for Frank Jarvis Atwood

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Frank Jarvis Atwood, | No.: CV22-00625-PHX-JAT (JZB) |
| Plaintiff, | **PLAINTIFF'S REPLY BRIEF** |
| v. | |
| David Shinn, *et al.*, | **\*\*CAPITAL CASE\*\*** |
| Defendants. | |
| | **Execution scheduled for June 8, 2022 at** |

1

**10:00 am**

Plaintiff Frank Atwood respectfully files this Reply to Defendants' Motion to Dismiss Amended Complaint (Doc. 19) and asks that this Court deny that motion.

## FACTUAL BACKGROUND

Frank Atwood, confined on Arizona's death row by the Arizona Department of Corrections, Rehabilitation & Reentry (the "Department"), has been a devout practitioner of the Greek Orthodox faith for more than two decades. He observes a strict schedule of prayer and study at the direction of his priest, Father Paisios, Abbot of the St. Anthony's Greek Orthodox Monastery in Florence, who baptized him into the faith in July, 2000 and has visited and ministered to him regularly for many years.

Now, Arizona is preparing to execute Mr. Atwood on June 8, 2022. Anticipating this event, Mr. Atwood asked the Department in June, 2021 to agree to permit Fr. Paisios to accompany him in the execution chamber to administer last rites (including the very same sacraments it has accommodated for many years), which requires physical presence, touch, and speaking directly to Mr. Atwood. The Department refused, without explanation, even to allow him in the room. After Mr. Atwood filed his original complaint in this matter on April 13, 2022 (Doc. 1), the Department hastily amended its Execution Procedures (D.O. 710) on April 20, 2022 to address spiritual advisors. The recently amended protocol states:

> *2.1.3.1.1. The inmate may designate one clergy/spiritual advisor to accompany the inmate into the lethal injection execution chamber for audible prayer and religious touch, consistent with the U.S. Supreme Court's Opinion in Ramirez v. Collier (March 24, 2022), and the Department reserves the right to enforce as necessary any or all reasonable restrictions on the audible prayer and religious touch as set forth in the U.S. Supreme Court's Opinion.*

Five days later, Defendants filed a Motion to Dismiss, asserting that the amendment mooted Mr. Atwood's claims and they had fully satisfied their obligation to accommodate his religious exercise. On May 19, 2022, Mr. Atwood filed an Amended Complaint (Doc. 14), with the consent of Defendants. The following day, Defendants filed a motion to consolidate this case with a separate case Mr. Atwood filed against an overlapping set of defendants regarding the method of his execution (Doc. 17), and on May 25, 2022, Defendants filed a motion to dismiss the Amended Complaint (Doc. 19). Also on May 25, 2022, this Court ordered that by May 31, 2022, either the parties file a stipulated proposed form of injunction, or Defendants file a notice indicating where the parties disagree (Doc. 21). The parties subsequently exchanged proposed terms, and agreed on many of them, but Defendants have not agreed to allow Mr. Atwood to undergo the ritual of tonsure in a manner that comports with the requirements of his religion, nor to allow his spiritual advisor to place his priestly stole on Mr. Atwood's head during his last rites in the execution chamber. Moreover, Defendants have steadfastly refused to agree to any accommodations in the event of an execution by lethal gas, as they have consistently taken the position that Mr. Atwood may now be executed only by lethal injection. Mr. Atwood believes he is still entitled to a choice of execution by a *constitutional* lethal gas method, and the Department, in designating hydrogen cyanide as the gas it would use, has yet to offer him the choice it is required under Arizona law to provide. *See* Motion (Doc. 19) at 4. This question has not yet been resolved by the Court where it has been presented.

## ARGUMENT

**Stipulations**

To their credit, the Defendants have stipulated to many of the requests raised by Mr.

Atwood in his complaint. There are very few remaining issues for this Court to resolve and Mr. Atwood wants it to be understood that he appreciates the accommodations the Defendants are willing to make thus far in the process. That being said, there are certain aspects of this matter which involve core tenets of Greek Orthodoxy which Mr. Atwood is unable to spiritually compromise on. Defendants *have* explicitly refused to fully accommodate Mr. Atwood's religious exercise in two areas correctly identified by this Court in Document # 29: "[Defendants]…are prohibited from executing Mr. Atwood without first permitting (1) his participation in a tonsure ceremony while confined to his wheelchair, with leg shackles, but not in a restraint chair, and (2) receipt of last rites from his spiritual advisor inside the execution chamber, including the placement of the priestly stole on his head." (Doc. 28-4). Thus, these are then, the only additional accommodations at issue before this Court. Unfortunately, unlike many disputes, there can be no compromise from Mr. Atwood on these issues as they are central issues in the Greek Orthodox religion.

**Tonsure Ceremony**

The monastic tonsure ceremony is the religious rite of initiation for individuals who are becoming Orthodox monks and a sacrament of the Orthodox faith. The ceremony involves, inter alia, chanting prayers over the initiate, who recites vows of renunciation and faith. Throughout the ceremony, the initiate ceremonially puts on the various elements of the habit or vestment worn by Orthodox monks. Each of these elements has a ritual and spiritual significance. For example, the veil which forms part of the vestment "signifies that the Monk must veil his fact from temptation and guard his eyes and ears against all vanity." Putting on the elements of the monastic vestment is thus an outward indication of the spiritual committed the initiate has made during the ceremony.

4

1  The Defendants have already agreed to let Mr. Atwood don the ceremonial garb, however
2  it will be impossible for him to do so if he is ankle chained, belly chained, chest strapped and
3  wrist chained into a restraint chair.  There is no allegation that Mr. Atwood poses any danger to
4  the priests with whom he has prayed with, respected and loved for decades.  Indeed, Mr.
5  Atwood's physical condition essentially leads to the conclusion that at age 66, in a wheelchair
6  with severe bone deformities and disease, he is indeed at this point in his life, a harmless old
7  man.  The State can offer nothing other than the tired, well-worn mantra of "security" to justify
8  each and every action they undertake, with no effort made to address the reality of any given
9  situation.  Mr. Atwood poses no security threat if out of a restraint chair he can simply don and
10 doff the sacred garments essential to the tonsure ceremony in Greek Orthodoxy.  The State has
11 advanced no compelling need to vitiate Mr. Atwood's religious freedom under the First
12 Amendment.

**The Priestly Stole**

14 The other issue confronting this Court involves the priestly stole to be placed over Mr.
15 Atwood's head during his execution.  During confession in the Orthodox church, the priest
16 places his stole over the penitent's head while he prays. The stole is nothing more than a cloth
17 scarf draped around Mr. Atwood's neck. Confession is an integral part of last rights, so if one
18 disrupts confession one is disrupting last rites.
19 This Court must clearly understand that tonsure and last rites are separate things. Both are
20 sacraments, but they are unrelated. Tonsure is the ceremony  one goes through when becoming  a
21 monk (which they do for people at end of life who wanted to become monks but couldn't for
22 whatever reason). Last rites is confession and other rituals associated with someone who is about
23 to die. They are doing the tonsure on Tuesday, the last rites on Wednesday before/during the
24 execution.
25 In this case, Defendants have already agreed that the Department "shall... allow
26 Plaintiff's spiritual advisor to bring in a ceremonial vestment to be worn by Plaintiff for the

5

tonsure, and Plaintiff will be permitted to wear this vestment during the ceremony." Dkt. 25, at 2. But it would be impossible for Mr. Atwood to wear the vestment--an integral part of the ceremony to which Defendants have already stipulated--if he is restricted in a restraint chair. Given the degree to which the restraint chair would interfere with the tonsure ceremony and the manifest unnecessity of the extreme level of security it would impose. See:
https://www.stots.edu/article/The+Monastic+Grades

The Orthodox stole, called the epitrachelion is Greek, is an essential element of the vestment worn by Orthodox priests. Church tradition prohibits the priest from performing any sacred duties without it, and it serves a number of symbolic and ceremonial purposes during Orthodox sacrament. Most notably, it is placed over the head of the penitent during the sacrament of repentance, or confession, during which it "symbolizes and testifies to the grace received" by the the penitent. Because the sacrament of repentance is an integral part of orthodox last rites, preventing Father Paisios from placing his stole on Mr. Atwood's head would disrupt an essential component of the ritual, as would limiting Paisios' touch to Frank's feet/ankles only. See: https://goodguyswearblack.org/2020/05/13/the-epitrahilion/

Again, the State argues "security" as the reason for denying Mr. Atwood his rights under the First Amendment. They argue that the execution room is so small that for a priest to move to the head of the execution table from the foot of the table would cause all security to have to abandon their posts to let one small, slim man move from one end of the room to the other. The Defendants own photographs belie that assertion. Furthermore, there is no reason given why the priest cannot start and end the execution process at the head of Mr. Atwood, instead of at his feet. The IV lines will be inserted in Mr. Atwood's arms so standing at his head should have no impact on the lines. The perpetual mantra of "security" to justify each and every intrusion into Constitutional rights wears thin after a point.

**CONCLUSION**

This Court should require that Defendants respect and allow Mr. Atwood's religious exercise during his last moments. The restrictions Defendants continue to impose are unwarranted. Mr. Atwood should be unchained and free to don and doff the sacred garments necessary for his tonsure and he should be permitted to don the sacred stole as his life is ending while strapped securely to the execution table.

Dated this 6th day of June, 2022.

/s/    David A. Lane

Joseph J. Perkovich
Amy P. Knight
David Lane
Reid Allison

Attorneys for Frank Atwood